CA NO. 23-30035

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | D.Ct. # 22-CR-066-LK |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KENDALL ALSTON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

---

## APPELLANT'S REPLY BRIEF

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON


HONORABLE LAUREN KING
United States District Judge


MYRA SUN (WA Bar # 14118)
Attorney at Law
1010 N. Central Ave., #100
Glendale, California   91202
Telephone (323) 474-6366
Facsimile (323) 488-6757
Email:   myrasunlaw@gmail.com

Attorney for Defendant-Appellant

CA NO. 23-30035

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,      )      D.Ct. # 22-CR-66-LK
                 Plaintiff-Appellee,      )
               v.      )
KENDALL ALSTON,      )
                 Defendant-Appellant.      )

---

## APPELLANT'S REPLY BRIEF

---

     Appellant Kendall Alston, by and through his attorney of record, submits his Reply Brief for the Court's consideration.

Dated:   January 26, 2024             */s/ Myra Sun*
                                         MYRA SUN
                                         Attorney for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................3

TABLE OF AUTHORITIES ....................................................................5

I. INTRODUCTION ...........................................................................7

II. ARGUMENT ..................................................................................7

    A. The abuse-of-discretion standard of review applies to the district court's declining to give a definition of 924(c)'s "in furtherance of" element, because Mr. Alston fully preserved an objection to the definition's absence....................7

    B. The district court abused its discretion when it declined to give an instruction on the meaning of "in furtherance of." ..............................................10

    C. The government cannot meet its burden of showing that Mr. Alston was unprejudiced by the denial of his instructional request. ......................................13

    D. Mr. Alston's guilty pleas to the felon-in-possession Counts, 4 and 5, should be vacated under *Bruen v. New York State Rifle & Pistol Association*. .............15

        1. Good cause exists for Mr. Alston's not raising his claim below. ............15

        2. This Court should not find Mr. Alston waived a *Bruen* claim, because he raises a question of law in his challenge to §922(g)(1). .............................15

        3. This Court should not find waiver on the ground that the government was prejudiced by Mr. Alston's not raising a *Bruen* claim below.........................16

        4. *Bruen* replaced the test for evaluating Second Amendment challenges used by this Court in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), rendering these decisions irreconcilable. .......................................................17

        5. In the colonial era, no regulation excluded felons as "people" protected by the Second Amendment. ...................................................................................19

        6. Forfeiture and "civil death" are not relevantly similar historical analogues supporting felon disarmament in 18 U.S.C. §922(g)(1). ................20

        7. Miscellaneous laws prohibiting arms possession by groups deemed "dangerous" are not relevantly similar analogues to §922(g)(1). people......21

III.   CONCLUSION ................................................................................21

CERTIFICATE OF COMPLIANCE.........................................................22

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING ...............................23

# TABLE OF AUTHORITIES

## Cases

*Avery v. Everett*,
 18 N.E. 148 (N.Y. 1888) ........................................................20

*Bruen v. New York State Rifle and Pistol Association*,
 597 U.S. 1 (2022) ...............................................................15

*District of Columbia v. Heller*,
 554 U.S. 570 (2008) ............................................................17

*Hatfield v. Barr*,
 925 F.3d 950 (7th Cir. 2019) ................................................17

*Kanter v. Barr*,
 919 F.3d 437 (7th Cir. 2019) .......................................... 16,19

*Miller v. Gammie*,
 335 F.3d 889 (9th Cir. 2003) ................................................18

*Range v. Attorney General*,
 69 F.3d 96 (3d Cir. 2023)......................................................15

*United States v. Cortes*,
 757 F.3d 850 (9th Cir. 2014) ................................................10

*United States v. Echeverry*,
 759 F.2d 1451 (9th Cir. 1985) ..............................................10

*United States v. Irons*,
 31 F.3d 702 (9th Cir. 2022) ........................................ 11,12,14

*United States v. Krouse*,
 370 F.3d 965 (9th Cir. 2004) ................................................12

*United States v. Lopez*,
 100 F.3d 98 (9th Cir. 1996) ..................................................13

*United States v. Lopez*,
    477 F.3d 1110 (9th Cir. 2007) .................................................................... 11.12.13

*United States v. Phillips*,
    827 F.3d 1171 (9th Cir. 2016) .............................................................................18

*United States v. Thongsy*,
    577 F.3d 1036 (9th Cir. 2009) .............................................................................11

*United States v. Vongxay*,
    594 F.3d 1111 (9th Cir. 2010) .................................................................... 17,18

**Statutes**

18 U.S.C. §922(g)(1)........................................................................... passim

18 U.S.C. §922(g)(5)........................................................................... passim

18 U.S.C. §924(c)………………………………………………………passim

# I.

# INTRODUCTION

Mr. Alston has been convicted of one count of violating from his convictions under 18 U.S.C. §924(c), possession of a gun in furtherance of a drug crime (count 3), and two counts of being a felon in possession of a firearm under 18 U.S.C. §922(g)(1). He appeals the district court's declining to define the phrase "in furtherance of" as to the 924(c) count. He also seeks to preserve a claim that he has a Second Amendment right to bear arms, and that his conviction under §922(g)(1) impermissibly infringes that right.

# II.    ARGUMENT

**A.    The abuse-of-discretion standard of review applies to the district court's declining to give a definition of 924(c)'s "in furtherance of" element, because Mr. Alston fully preserved an objection to the definition's absence.**

The government asserts that plain error review applies to review of the district court's decision on the 924(c) elements instruction. Mr. Alston disagrees.

The government gives two trial-proceedings-related reasons, and one appeal-related reason,[1] for a plain-error standard of review. The trial-related reasons are that (1) Mr. Alston used the words "you don't have to" in arguing for his in-furtherance-of instruction, and so conceded to the correctness of the instruction

---

[1]The government says that Mr. Alston's undersigned appellate counsel failed to cite the abuse-of-discretion standard of review in his opening brief, which waived it, so that plain-error applies. AB at 14, n. 2. Mr. Alston apologizes for the oversight, but, respectfully, his omission does not bind this Court. The rule of waiver is discretionary, and a failure to raise a given standard of review in its brief does not bind the Court. *See United States v. Macias*, 789 F.3d 11011, 1017 (9th Cir. 2015), n. 3 (applying plain error notwithstanding the government's failure to argue for it). The choice of standard of review is itself a question of law, and this Court can and should apply the abuse-of-discretion standard here.

without it, ER 19; and (2) the exact instruction wording he sought differs from that in the current version of No. 14.23, on appeal he is arguing for the wording in the current instruction, and he did not preserve a claim on that ground.   AB 5, 7, 13.

As to the "you don't have to" assertion:   Mr. Alston's request for an in-furtherance-of definition was timely and unyielding.   He filed the instruction over a month before the trial actually started, and the government opposed it in writing. ER 20-21, CR 51, 54, 69.   At a subsequent pretrial conference, the government said it opposed "tinkering with the model instructions" in part because it would "be an issue on appeal," and on the ground that the ordinary meaning of the phrase was sufficient.   ER 17.   In response, defense counsel showed he knew the difference between a model instruction and his own requested "in-furtherance-of" instruction:

"The point here is, central to this defense in this case is that issue.   These model instructions, in the introduction to them, they tell you they're not for every single case.   They warn you, modify them if you need to.   This is one instance, one case where it's an important modification.

As far as worrying about appeal, Your Honor, I'm not worrying about the appeal bogeyman.   If you give that instruction that we're talking about to give some definition to that term, what's the bases [sic] for appeal?   It's an accurate statement of the law.   At least, what, eight or nine circuits do the same thing.   It is not prohibited in the Ninth Circuit.   *They just said* you don't have to do it."

ER 18, emphasis added.

Seen in context, the words "you don't have to do it" did *not* mean that defense counsel was conceding the correctness of an instruction without an in-furtherance-of definition *in this case*.   He was arguing, as the government does in

8

its own brief now, AB at 17, that model instructions can be changed if a case warrants it.

In addition to this argument, just before the district court finalized the instructions defense counsel brought up the *all* of the special instructions he had requested by number (the in-furtherance-of instruction was No. 2) and said, "We respect the court's decision [not to give them] but we take exception." The court answered, "All right. Thank you. You have made your record on that." ER 14. She was right.

As to the second trial-related reason it seeks plain error, the government actually makes two points. It first asserts that the current definition of "in furtherance of" in 14.23 was not in effect at the time of trial, AB at 16. Mr. Alston believes it was.[2] But the government's second and main point is that Mr. Alston is now trying to argue that the error was the failure to give the in-furtherance-of language now found in 14.23, and as it is different from this Court's formulation for the defense he did not properly preserve an in-furtherance-of instructional request. AB 13.

Mr. Alston is not saying the district court should have given a version of 14.23 about which all sides were apparently unaware. But the fact that this Court has seen fit to add such a definition to the model instruction is absolutely "legally relevant to the question of whether he should have gotten such an instruction. There is no significant difference between this added definition of "in furtherance of" and at least part of Mr. Alston's proposed instruction. The added, current 14.23 language – "The phrase 'in furtherance of' means that the defendant possessed the firearm with the subjective intent of *promoting* or facilitating" a drug crime – is actually quite similar to what the defense requested – "'In furtherance

_____

[2]The parties have been conferring about their differing views. They may submit a joint communication to the Court on this point.

of' means to help forward, to *promote*, to advance or to give aid to. To prove that the defendant possessed a firearm 'in furtherance of' drug trafficking, you must find that the defendant possessed the firearm to advance or *promote* the commission of" the underlying offense.…". ER 13, emphasis added. At the very least, the verb requiring that the gun be possessed to "promote" a charged drug crime is part of each. Mr. Alston's proposal used more words, but he could not have expected that he would necessarily get his precise language. The court had only to provide an instruction covering his theory. *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir. 1985). It is hard to believe he would have rejected the formulation in the new 14.23 as opposed to nothing, which is what he got.

In sum, Mr. Alston asked below for *some* instruction defining "in furtherance of" because it mattered to his defense, and here on appeal he argues that not giving it was an error in his case. The district court found he had preserved this claim. He did.

**B.    The district court abused its discretion when it declined to give an instruction on the meaning of "in furtherance of."**

As noted, Mr. Alston drafted and asked for an instruction conveying what it means to possess a gun in furtherance of his particular drug offenses.[3] In his case there was both a factual foundation and legal support for his request, warranting the giving of *some* instruction. *United States v. Cortes*, 757 F.3d 850, 857-858 (9th Cir. 2014).

On factual foundation: Mr. Alston asserted that the size of the gun, and its

---

[3]If for some reason this Court disagrees with the district court that Mr. Alston did not preserve his request for this instruction, and that plain error applies, the argument here nonetheless also supports a contention that this error would have been plain. As he said, and as is discussed here, his instruction was a correct statement of the law.

location in a small backpack with electronic equipment, rendered it hard to get at. (1-ER-16) The evidence was that his sales that day were brief, hand-to-hand encounters on a public street in which both actors sought a quick, nonviolent exchange, and to avoid police attention. He could plausibly argue that possession of the gun, in those circumstances, would play no role.

On legal support for some language defining "in furtherance of," the cases cited by both sides – and the comment to 14.23 – reflect that there was (and is). They show, in fact, that even before the new version of 14.23, when district courts were asked to give such definitions, they have considered giving, or have actually given, formulations themselves, which did not always focus on the meaning that now appears in the new 14.23. *See United States v. Thongsy*, 577 F.3d 1036, 1042-1043 (9th Cir. 2009) (given, but an incorrect formulation, which was harmless error); *United States v. Lopez*, 477 F.3d 1110, 1115-1116 (9th Cir. 2007) (instruction denied, but not error to do so); *United States v. Irons*, 31 F.3d 702, 708 (9th Cir. 2022) (in-furtherance-of definition considered pretrial, not initially given, and the formulation given when the jury asked for one was incorrect).

The government suggests that the comment makes giving the "The phrase 'in furtherance of' means…" optional, AB at 16-17. He is not sure if this would mean that if the government wants it omitted, it would never be error to omit it. If so, the new Rule 14.23 and its comment, at least as of the filing of this brief, found at **https://www3.ce9.uscourts.gov/jury-instructions/node/1196**, does not support the government's position. The text does not give the slightest indication that giving "[t]he phrase 'in furtherance of' means…" language is optional in the sense that the government may mean. The comment's only explicit remark on when to give 14.23 says the instruction, as a whole, should be used to cases charging the in-furtherance-of prong of §924(c), and not the during-and-in-relation-to prong. It does not break out the clause "[t]he phrase 'in furtherance of'

means…" for limited use.

The government also considers the quoted language from *Lopez* to be "directly controlling precedent" that a court "does not err, much less plainly err, by failing separately to define 'in furtherance' of," and this "foreclose[s]" consideration of Mr. Alston's claim of instructional error here. AB at 15. But the authorities in the comment, and other cases Mr. Alston has already cited, hold that the "'in furtherance of' means…" language correctly states the law. A defendant has possessed a gun "in furtherance of" the charged drug crime only when the government shows proof of a nexus between the possession and the charged drug crime, defined as a defendant's intent to use the firearm to promote or to facilitate the offense. **https://www3.ce9.uscourts.gov/jury-instructions/node/1196**, Comment; *Lopez*, 477 F.3d at 1115, *Irons*, 31 F.3d at 711-712, AOB at 21-22. The comment's parenthetical about *Lopez* actually concerns the premise that an instruction breaking out the concepts of possession, and possession in furtherance of, is sufficient to keep a jury from convicting based on mere possession. *Id.* This Court has long recognized the significance of this break-out of the two concepts, and the new 14.23 maintains it. *See United States v. Krouse*, 370 F.3d 965, 966-967 (9th Cir. 2004). Using that parenthetical gives context to this distinction, showing how "[t]he phrase 'in furtherance of'…" language serves merely to sharpen it.

The "district court does not err" quotation certainly could cover defendants *other than* Mr. Alston. It could, for example, cover a defendant who wants to separately instruct the jury on more than the "phrase 'in furtherance of' means language, to focus on his unique circumstances. The comment makes clear that it would not be error to deny one about the 'fact-based inquiry' the jury must make. Mr. Alston also agrees that if a defendant prefers no instruction at all, or acquiesces in a district court's language as happened in *Irons*, 31 F.3d at 709-711

the quoted language does indeed say there would be no error, plain or otherwise. *Lopez*, 477 F.3d at 1115.

But this is not that case. Mr. Alston wanted an in-furtherance-of instruction essentially similar to the new 14.23 formulation. *Lopez* does not foreclose him either from seeking such an instruction below or appealing based on error in the denial of it.

Finally, Mr. Alston is not saying he should have had the instruction because the new "phrase 'in furtherance of' means…" language is a binding pronouncement of law, or precedent. AB at 17. All that happened here was this: he thought he thought some language about it was needed to argue his defense, the form instruction did not contain it, good wording appears in the case law, and he asked for it. Contrary to the government's assertion, defense counsel's request was a "serious argument," AB at 18, which he maintains on appeal. The district court abused its discretion when it rejected the request.

## C. The government cannot meet its burden of showing that Mr. Alston was unprejudiced by the denial of his instructional request.

The instructional error here was about a misstated rather than a missing element of an offense, as the government says, AB 19, but it was reversible error all the same. As given, the instruction misdescribed the meaning of "in furtherance of", in omitting language that would tell the jury that it meant he had to possess the gun in order to promote and facilitate his drug sales that day. As error it is not harmless, but harmful and reversible, if the jury convicted without making a finding of what Mr. Alston's proposed instruction included – if it convicted without finding proof of possession with an intent to promote or facilitate his offense. Or, as this Court has articulated, the error is only harmless "if it can be shown that the jury *necessarily* made the omitted finding." *United States v. Lopez*, 100 F.3d 98, 103 (9th Cir. 1996), emphasis in original. The jury here was

not told that "in furtherance of" called for proof of an intent to promote. And on the evidence here, it is more likely than not that this deficiency made a difference.

To contend, as the government does, that expert testimony about drug dealers having guns to protect proceeds made the gun strategically available for this purpose in *his* case, AB at 21, does not cure this error. Mr. Alston's counsel's cross-examination and argument challenged its ready availability, but he needed that "hook" of the in furtherance instruction to show the jury how it could create a reasonable doubt: The record, again, shows that this was an urban downtown block whose denizens wanted to avoid the police attention that showing a gun would attract; that Mr. Alston's particular brand of drug dealing involved drugs and money in pockets from quick, almost public hand-to-hand sales; and that the "heavy" gun, and its awkward location in a pack on Mr. Alston's back, away from the drugs and money, suggested it was ill-suited, undermining any intent to have it for all the purposes the experts suggested. AOB 13, AB 20. The government felt it necessary to argue that the gun was not so hard to get at, that it was accessible. 4-ER-528. But because of the denied instruction, the government did *not* have to demand, and the jury did not have to find, that the evidence meant Mr. Alston subjectively intended the gun's presence to promote or facilitate his drug activity that day. Counsel could and did argue these physical factors, but he could not argue the instruction as a source of reasonable doubt: that far from being a "strategic" intention, the heavy gun in a pack on Mr. Alston's back, away from the drugs and money, lacked a connection to his drug sales – that, for example, it was so much less suited to the protection-of-proceeds purpose than a smaller gun, in his pocket near the drugs and money, would have been.

Ultimately, the lack of a requested instruction that "in furtherance of" meant possession with that purpose "effectively removed from the jury's consideration the only disputed issue concerning the § 924(c) charge." *See Irons*, 31 F.3d at 714.

14

This was reversible error.

### D.    Mr. Alston's guilty pleas to the felon-in-possession Counts, 4 and 5, should be vacated under *Bruen v. New York State Rifle & Pistol Association*.

The government is correct that Mr. Alston pleaded guilty to Counts 4 and 5, the bifurcated felon-in-possession counts against him, rather than engaging in a stipulated-facts trial on them.   CR 61, 66, 118.

#### 1.    Good cause exists for Mr. Alston's not raising his claim below.

Mr. Alston's challenge rests on *Bruen v. New York State Rifle and Pistol Association*, 597 U.S. 1 (2022).    Mr. Alston recognizes it was decided in June 2022.   His first trial was scheduled to begin in July, but did not proceed until August.   CR 94.   He recognizes that he could have but did not raise the issue before trial.   But for deciding whether he had good cause, he submits that the proper inflection point to consider is the date of the decision – which came while this appeal was pending – in *Range v. Attorney General*, 69 F.3d 96 (3d Cir. 2023). It was the first Court of Appeals decision to apply *Bruen*'s demand for historical analysis, and conclude that that this country's historical tradition of firearms regulation did *not* feature "long-standing prohibitions" disarming felons.   There is good cause for him to have raised this claim only now.

#### 2.    This Court should not find Mr. Alston waived a *Bruen* claim, because he raises a question of law in his challenge to §922(g)(1).

The government asks this Court to find waiver of Mr. Alston's *Bruen* claim on the ground that it is not a pure question of law – that it is an as-applied rather than a facial challenge, and so does not fall within the pure-question of law exception.   AB at 27-28.

Mr. Alston respectfully submits that there is actually no dispute as to Mr. Alston's criminal record.   But before the parties even get to whether §922(g)(1)

applies to him as a felon, it is worth recognizing that *Bruen* presents a legal issue. The Supreme Court decided that this country's historical tradition of firearms regulation is the key to unlocking whether any given regulation may validly infringe on the right to possess weapons for self-defense: who held colonial-era, individual Second Amendment rights; the how and why of colonial-era limitations on those rights; and whether any statutory analogue from that time is sufficiently similar to §922(g)(1) to validate disarming any felon. He answers these legal questions in asserting that §922(g)(1) stands outside the colonial-era pattern of arms regulation, and thus invalidly infringes on the Second Amendment rights of *all* felons.

As the government says, a facial claim is different from an as-applied challenge that seeks to "carve out" an exception to an otherwise valid statute. AB at 27. The door *Bruen* creates for challenging §922(g)(1) is not open yet; opening it requires a decision on a question of law. If the Supreme Court, applying *Bruen*, indicates that §922(g)(1) falls outside the colonial-era pattern of arms regulation and invalidly infringes the Second Amendment rights of felons, there would be no need for Mr. Alston to argue for an exception. But one critical thread of the legal analysis is the view of then-Judge, now Justice Barrett in *Kanter v. Barr*, 919 F.3d 437, 451-469 (7th Cir. 2019): that colonial-era disarming regulations did not expressly disarm *all* felons, but the dangerousness of persons who were disarmed may have mattered. *If* that becomes the standard, it will raise the question of whether §922(g)(1) applies to Mr. Alston. But the threshold question, at the door, is purely legal. Under those circumstances, this Court should not find waiver.

### 3. This Court should not find waiver on the ground that the government was prejudiced by Mr. Alston's not raising a *Bruen* claim below.

The government also contends that waiver should be found because it was

prejudiced.   AB at 28.   It contends that is has been denied it the chance to make an adequate record of Mr. Alston's prior criminal history, which is laid out early in the government's brief.   AB at 2-3.here as a basis for disqualifying him from making a *Bruen* claim.   Mr. Alston disagrees.   Again, there is no dispute about his prior convictions.

More importantly, *Hatfield v. Barr*, 925 F.3d 950 (7th Cir. 2019), on which the government relies in part, does not suggest that the government is irrevocably prejudiced here.   *Hatfield* starts with the premise §922(g)(1) is presumptively valid as one of "long-standing prohibitions" referenced in *District of Columbia v. Heller*, 554 U.S. 570 (2008).   Mr. Alston challenges whether such prohibitions exist under the analysis *Bruen* compels.   In this he finds support from Justice Barrett's *Kanter* dissent, that the Second Amendment might prohibit applying §922(g)(1) to a felon who, by some formula, can show he is not dangerous.   The bears on two questions raised by *Bruen*:   whether the "long-standing" regulations alluded to in *Heller* even exist, and if they do, whether or not they are valid historical analogues to §922(g)(1).   If the Supreme Court concludes that the answer to either one of these questions is No, without exception, Mr. Alston may challenge his convictions on that ground.

In that event, the kind of showing required of both sides in *Hatfield* will be unnecessary.   But if a hearing is necessary, the government will surely have a chance to make a showing – and it will have a clearer path on what that showing must be.

### 4.   *Bruen* replaced the test for evaluating Second Amendment challenges used by this Court in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), rendering these decisions irreconcilable.

The government acknowledges that the *Bruen* test for evaluating Second Amendment challenges first requires a showing that the Second Amendment's

plain text covers a party's conduct; if it does, his right to bear arms is presumptively protected; then, the government must carry the burden of showing the existence of a historical analogue-regulation   The government seems to agree that this is "a different two-part test" which, it says, sharpens the analysis in *Heller*. See AB 33-34.

The mode of analysis, and different reasoning in reaching a result, are the keys to determining if *Vongxay* and *Bruen* are irreconcilable.   *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).   And *Vongxay*'s mode of analysis is so different from *Bruen* that it is almost unrecognizable.   As Mr. Alston has shown, *Vongxay* began by relying on authority that did not even concede the existence of an individual Second Amendment right, as *Heller* did.   *Vongxay*, 594 F.3d at 1116, though it is nonetheless good law under *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016).   AB at 37-38.   And none of the principles *Vongxay* adopts contains a shred of the historical or textual analysis *Bruen* requires.   Its view that felons lack Second Amendment rights relies on other Courts of Appeal cases, citing no historical regulations.   It approved the notion that felon-in-possession laws are "narrowly tailored" exceptions to the right to bear arms, or "reasonable regulations contemplated by the drafters of the Second Amendment," based on citations to other cases, all of which sounds like the means-end scrutiny *Bruen* rejected, again with no analysis.   *Id*. at 1116-1117.   These differences reflect more than just "some tension" between the reasoning of these cases.   AB at 36.   They reflect irreconcilability.

Like this Court in *Vongxay*, the government places great weight, throughout its analysis, on *Heller*'s reference to "long-standing" prohibitions on felon arms possession, repeated in *Bruen*.   But *Phillips*, for one, recognized that courts and scholars "are divided over how 'longstanding' these bans really are."   *Phillips*, 827 F.3d at 1174.   And the government also agrees, AB 35, that neither of those

decisions purported to "undertake an exhaustive historical analysis" of the Second Amendment's scope, or to decide "who may lawfully possess a firearm[.]" *Bruen*, 597 U.S. at 38, 72 (Alito, J., concurring). This leaves open the question of whether §922(g)(1) is valid under the kind of textual analysis of the Second Amendment, and the review of colonial-era arms regulations, called for by *Bruen*. What is certain, however, is that the analysis in *Vongxay* is not reconcilable with the *Bruen* approach. It must be overruled.

**5.    In the colonial era, no regulation excluded felons as "people" protected by the Second Amendment.**

The government contends the colonial-era that the colonial-era understanding was felons were not "people" who enjoyed the protections of the Second Amendment. Mr. Alston has addressed, as Justice Barrett did in *Kanter*, the distinction between the types of rights and the power and inclination of legislatures to abridge some rights of felons (such as the right to vote) but not others (such as the right to possess arms). AOB 37-39, AB 41-44. The question is whether colonial-era legislatures *enacted* regulations to disarm felons, not whether they thought they had the power to do so. The government points to no such enactments. None reduced the portion of the populace who could possess arms this way. And, as to whether the political community covered by the Second Amendment is limited to citizens, AB at 45, Mr. Alston does disagree that the line is so bright. 18 U.S.C. §922(g)(5) blurs this purported line, in that it criminalizes possession of arms by non-citizens without permanent residence or other permission to live in this country. This is an example of Congress *extending* the right to bear arms, rather than limiting it.

**6.     Forfeiture and "civil death" are not relevantly similar historical analogues supporting felon disarmament in 18 U.S.C. §922(g)(1).**

Under *Bruen* it is not enough, as the government does, to cite to what the colonial public "understood" or "accepted" when it came to the rights of felons. AB at 47.   Actual regulations, how they operated and why they existed, are the basis of a *Bruen* analysis.   *Bruen*, 597 U.S. at 29.   Moreover, In this country "civil death" laws, and related forfeiture requirements, AB 46-47, are not historical analogues that satisfy the required analysis.

Moreover, citation to English common law, AB 46, 48, 52-53, under which felons were disarmed and executed and their goods, including arm, were seized, is not dispositive.   Rather, the colonial tradition controls, *Bruen*, 597 at 34-35.   In any event, it is hardly clear that felons were uniformly executed in England during the American colonial era.   Many were actually exiled to what became this country.   Here, newly independent state legislatures "moved away from the death penalty" and, generally, most felony crimes were not punishable by death.   The first Congress prohibited estate forfeiture punishments against felons.   *See* Appellant's Reply Brief in *United States v. Rojo*, No. 23-598, Dkt. No. 34.1:9.

Nor were civil death laws uniformly accepted.   The government here cites the dissent in *Avery v. Everett*, 18 N.E. 148, 150 (N.Y. 1888).   It cited the principle that a felony conviction could lead to the loss of arms.   But *Avery* itself is a 19th-century decision that permitted an heir, convicted of second-degree murder to take under his father's will – its prohibition on the heir's family inheriting if the heir were deceased did not include the circumstance of "civil death."   The dissent ultimately lamented the decision as setting "obscure, uncertain, and easily missed" markers for what would constitute civil death.

**7.     Miscellaneous laws prohibiting arms possession by groups deemed "dangerous" are not relevantly similar analogues to §922(g)(1). people**

The government also contends that laws disarming persons considered "dangerous" are valid analogues to §922(g)(1).   Mr. Alston has already noted that these provisions sometimes applied to people who did not have rights under the Constitution during the colonial era.   Restrictions on people who declined to take loyalty oaths, or who were Catholics rather than followers of the Church of England, are outliers.   They came about in times of "acute disorder."   In general, laws aimed at disarming those whose gun possession was thought "to terrify" the public were, in fact, often directed at political opponents.   Thus, revolutionary-era disarmament provisions tied to the taking of various loyalty oaths, or calling for membership in a particular religious group, do not pass the "why" test as historical analogues.   They were not relevantly similar in defining "dangerousness."   They do not save §922(g)(1).

## III.   CONCLUSION

For the above reasons, Mr. Alston asks this Court to reverse his convictions on Count 3 (his conviction under §924(c)) and Counts 4 and 5 (his conviction under §922(g)(1)),


Dated:   January 26, 2023                    _____*/s/ Myra Sun*_____
                                             MYRA SUN
                                             Attorney for Appellant

# CERTIFICATE OF COMPLIANCE

**(United States Court of Appeals for the Ninth Circuit – Form 8)**

**9th Cir. Case Number(s)** _____ 23-30035 _____

I am the attorney for Appellant __ Kendall Alson _____

**This brief contains** 4,587 **words,** excluding the items exempted by Fed. R. App. P. 32(f).The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[    ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[    ] is an **amicus** brief and complies with the word limit of Fed. R. App. P.29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[    ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[    ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [    ] it is a joint brief submitted by separately represented parties;

    [    ] a party or parties are filing a single brief in response to multiple briefs; or

    [    ] a party or parties are filing a single brief in response to a longer joint brief.

[    ] complies with the length limit designated by court order dated _____.

[    ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**_____ */S/ Myra Sun*  \*        **Date** _____ January 26, 2024 _____

*(use "s/[typed name]" to sign electronically-filed documents)*

22

# CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

### (United States Court of Appeals for the Ninth Circuit – Form 15)

**9th Cir. Case Number(s)**_____23-30035_____

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[ X ] I certify that I served the foregoing/attached document(s)via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**

[  ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants*(list each name and mailing/email address)*:

**Description of Document(s)***(required for all documents)***:**

Appellant's Reply Brief

**Signature**____*/S/ Myra Sun*_____     **Date**  *January 26, 2024_____

*(use "s/[typed name]" to sign electronically-filed documents)*